In re MONARCH CAPITAL
CORPORATION,
Debtor.

MONARCH LIFE INSURANCE COMPA-
NY, Springfield Life Insurance Compa-
ny, Incorporated, First Variable Life In-
surance Company, and David V. Whitt,
Appellants,

v.

ROPES & GRAY, Appellee.

In re MONARCH CAPITAL
CORPORATION,
Debtor.

MONARCH LIFE INSURANCE COMPA-
NY, Springfield Life Insurance Compa-
ny, Incorporated, First Variable Life In-
surance Company, and David V. Whitt,
Appellants/Cross–Appellees,

v.

ROPES & GRAY, Appellee/Cross–
Appellant.

Civ. A. Nos. 94–40010–FHF,
94–40011–FHF.

United States District Court,
D. Massachusetts.

Oct. 5, 1994.

Charles K. Bergin, Jr., Frederica Hummel McCarthy, Robinson, Donovan, Madden & Barry, Springfield, MA, Bruce E. Baty, Christopher D. Schneider, Morrison & Hecker, Kansas City, MO, for Monarch Capital Corp., Springfield Life Ins. Co., Inc., Monarch Life Ins. Co., First Variable Life Ins. Co., and David V. Whitt.

Judith A. Miller, John K. Villa, Williams & Connolly, Washington, DC, for Ropes & Gray in Civ.A. No. 94–40010–FHF.

James K. Brown, Foley, Hoag & Eliot, William F. McCarthy, Alyson B. Gal, Ropes & Gray, Boston, MA, for Monarch Capital Corp. in Civ.A. No. 94–40011–FHF.

Charles S. Cohen, Egan, Flanagan & Cohen, P.C., Springfield, MA, Nicole K. Seligman, Judith A. Miller, John K. Villa, Williams & Connolly, Washington, DC, for Ropes & Gray in Civ.A. No. 94–40011–FHF.

### MEMORANDUM AND ORDER

FREEDMAN, Senior District Judge.

## I. INTRODUCTION

The parties to this imbroglio, Monarch Life Insurance Company ("MLIC"), Springfield Life Insurance Company, Incorporated ("SLIC"), First Variable Life Insurance Company ("FVL"), and David Whitt are appellants (hereinafter, collectively, "appellants"), and Ropes & Gray ("R & G") is the appellee in Civil Action No. 94–40010–FHF. MLIC, SLIC, FVL and David Whitt are also appellants/cross-appellees, and R & G is the appellee/cross-appellant in Civil Action No. 94–40011–FHF. The two cases, Civil Action No. 94–40010–FHF and 94–40011–FHF, have been consolidated in this action.

## II. PROCEDURAL AND FACTUAL HISTORY

Prior to reorganization in bankruptcy, Monarch Capital Corporation ("MCC") was the holding company of MLIC and MLIC's subsidiaries, SLIC and FVL. Brief of Appellants Monarch Life Insurance Company, Springfield Life Insurance Company, Incorporated, First Variable Life Insurance Company, and David V. Whitt Appealing the Bankruptcy Court's Orders of December 16, 1993 ("Appellants' 94–40010 Brief") at 3. On May 30, 1991, the Massachusetts Commissioner of Insurance ("the Commissioner"), as temporary receiver for MLIC, filed an involuntary petition in bankruptcy against MLIC's parent, MCC, in the United States Bankruptcy Court for the District of Massachusetts. *Id.* The law firm of R & G represented MCC in the bankruptcy proceedings. *In re Monarch Capital Corporation,* No. 91–41379–JFQ, slip op. at 4 (Bankr.D.Mass. October 15, 1993) ("Contempt Order"). At one time R & G also represented MLIC, although the representation ceased prior to the bankruptcy proceedings. *See* Reply Brief of Appellants Monarch Life Insurance Company, Springfield Life Insurance Company, Incorporated, First Variable Life Insurance Company, and David V. Whitt Appealing The Bankruptcy Court's Order of October 15, 1993 ("Appellants' 94–40011 Reply Brief") at 22. On June 25, 1992, the Bankruptcy Court confirmed MCC's Second Amended Plan of Reorganization ("the Plan"), effectively concluding the bankruptcy proceedings. *Id.*

The Plan embodied the terms of an extensive settlement agreement entered into among MCC's lenders (the "235 Banks"), the

trustee of MCC's estate (the "Trustee"), and the Commissioner, as temporary receiver of MLIC. *Id.* at 2. The Plan resolved, amongst other things, the claim of MLIC against MCC totaling $280 million. *Id.* In consideration of MLIC waiving this claim, the Trustee released all of the estate's claims against MLIC. *Id.* Consistent with the Plan, the Order confirming the Plan contained an injunction (the "Injunction") prohibiting the commencement or prosecution of certain actions or proceedings. *Id.* at 3.

On May 6, 1993, appellants brought suit against R & G and Ernst & Young for $750 million in the Superior Court of Hampden County, Massachusetts (the "state court action"). Brief of Appellants Monarch Life Insurance Company, Springfield Life Insurance Company, Incorporated, First Variable Life Insurance Company, and David V. Whitt Appealing the Bankruptcy Court's Order of October 15, 1993 ("Appellants' 94–40011 Brief") at 4; *see also* Contempt Order at 4. Appellants allege that R & G cooperated in various transactions whereby MLIC financed the real estate investments of MCC in violation of certain insurance laws. Contempt Order at 4. Specifically, the complaint in the state court action alleges that a Short Term Investment Pool ("STIP") was designed so that MCC could obtain unsecured loans from MLIC in an effort to keep the former's real estate dealings afloat. *Id.* The existence and nature of these loans, the complaint goes on, were hidden from insurance regulators. *Id.*

In its answer to the complaint, R & G maintains that a wholly-owned subsidiary such as MLIC exists solely for the benefit of its parent, MCC in this case. *Id.* R & G also states that it first learned of the nature and extent of the loans two years after the STIP began, when its balance was at its peak of $217 million. *Id.* at 4–5. At that time, R & G asserts that it instructed MCC not to draw further funds from MLIC. *Id.* at 5.

More importantly for the purposes of this appeal, on the same day it filed its answer in the state court action, R & G filed a motion for contempt in the Bankruptcy Court, claiming that the state court action violated the terms of the Injunction. Appellants' 94–

40010 Brief at 4. On October 15, 1993, the Bankruptcy Court issued a Contempt Order as a result of the filing of the complaint in the state court action. The Contempt Order also barred the state court action pursuant to res judicata principles. Finally, the Contempt Order declined to impose sanctions, as R & G had requested.

Appellants stayed the state court action, and pursuant to Federal Rules of Bankruptcy Procedure 9020 and 9033, filed objections to the Bankruptcy Court's Contempt Order. Appellants' 94–40010 Brief at 4. Since they were uncertain of the proper procedure for seeking review of a bankruptcy court's contempt order, appellants also filed a notice of appeal pursuant to Federal Rule of Bankruptcy Procedure 8001. *Id.* R & G cross-appealed, asserting that the Bankruptcy Court erred in denying sanctions in the Contempt Order. Brief of Appellee/Cross–Appellant Ropes & Gray ("R & G's 94–40011 Brief") at 1–2. R & G also moved to dismiss appellants' objections, arguing that the proper procedure for review of a contempt order is through an appeal. Brief of Appellee Ropes & Gray ("R & G's 94–40010 Brief") at 3. Finally, appellants filed a motion to dismiss R & G's cross-appeal, stating that the proper procedure for seeking review of the Contempt Order is through objections pursuant to Rules 9020 and 9033. Appellants' 94–40010 Brief at 4–5.

On December 16, 1993, the Bankruptcy Court granted R & G's motion to dismiss appellants' objections, denied appellants' motion to dismiss R & G's cross-appeal, and denied appellants' motion to file a reply memorandum in support of their objections. *In re Monarch Capital Corporation,* No. 91–41379–JFQ, slip op. at 1 (Bankr.D.Mass. December 16, 1993) ("Order of December 16, 1993"). Thus, the Bankruptcy Court agreed with R & G that the proper procedure for review of a contempt order is through an appeal under Rule 8001, not through objections under Rules 9020 and 9033.

Appellants appeal the Contempt Order as well as the Order of December 16, 1993. R & G cross-appeals on the Contempt Order. In sum, the broad issues before the Court are first, what is the proper procedure for

review of the Bankruptcy Court's Contempt Order; second, if review of the Contempt Order is for this Court, did the Bankruptcy Court have the power to issue the Contempt Order; third, if the Bankruptcy Court had the power to issue the Contempt Order, was the Contempt Order proper. In determining whether the Contempt Order was proper, the Court must ask whether the Injunction that gave rise to the Contempt Order was proper and whether the Injunction applied to the state court action. In their briefs, the parties raise additional sub-issues. The Court will consider these sub-issues as they arise out of the three broader issues.

## III. DISCUSSION

A. *Procedure for Review of Contempt Order*

*(Civil Action No. 94–40010–FHF)*

The Court first addresses the procedure for review of the Bankruptcy Court's Contempt Order. In addressing the procedure for review, the Court must consider 28 U.S.C. § 157 ("section 157"). Section 157 allows the district court to refer cases to the bankruptcy court, and the latter may then enter final judgments and orders if the matter is a core proceeding. *See* 28 U.S.C. §§ 157(a)–(b)(1). In such a case, the proper procedure for review is through an appeal to the district court, where the general standard of review applies. *See* 28 U.S.C. §§ 158(a), (c). That is, findings of fact shall not be set aside unless clearly erroneous and applications of law are reviewed *de novo*. *See Casco Northern Bank v. DN Assocs. (In re DN Assocs.)*, 3 F.3d 512, 515 (1st Cir. 1993).

If the matter is a non-core proceeding, the bankruptcy judge may hear the matter if it is otherwise related to a title 11 case. *See* 28 U.S.C. § 157(c)(1). In non-core proceedings, the bankruptcy judge's findings are not final judgments and orders, but rather are proposed findings of fact and conclusions of law that are submitted to the district court for entry of a final order or judgment. *Id.* In considering the proposed findings of fact and conclusions of law, the district court conducts a *de novo* review of any timely objected-to

matter. *Id.* However, with the consent of all the parties, the district court may refer a proceeding related to a title 11 case to a bankruptcy judge to enter final orders and judgments, subject to review by appeal as provided in 28 U.S.C. section 158. *See* 28 U.S.C. §§ 157(c)(2) and 158(a), (c).

Thus, the proper procedure for review of the Bankruptcy Court's Contempt Order hinges on whether the contempt proceeding is a core or a non-core proceeding. Section 157 provides a non-exhaustive list of core proceedings, but contempt proceedings are not included. 28 U.S.C. § 157(b)(2). The Court finds no binding precedent on point. Thus, the Court must analyze core and non-core proceedings as well as case law to determine whether a contempt proceeding is core or non-core.

1. Core vs. Non–Core

■ Because bankruptcy courts are Article I courts, and not Article III courts, their jurisdiction is constitutionally limited. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The bankruptcy court may hear and determine all core proceedings; that is, proceedings that are "integral to the core bankruptcy function of restructuring debtor-creditor rights ... [including] all necessary aspects of a bankruptcy case." *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, 167 (1st Cir.1987) (citation omitted). However, core proceedings are not restricted to claims directly against the estate. *Id.* at 169. Indeed, "core proceedings" are interpreted broadly, "close to or congruent with constitutional limits." *Id.* at 168. Finally, core proceedings do not implicate any private, state-created rights. *See Marathon Pipe Line Co.*, 458 U.S. at 69–70, 102 S.Ct. at 2870–71.

■ Non-core proceedings are "concerned only with state law issues that did not arise in the core bankruptcy function of adjusting debtor-creditor rights." *In re Arnold Print Works, Inc.*, 815 F.2d at 167. Non-core proceedings implicate private, state-created rights. *See Marathon Pipe Line Co.*, 458 U.S. at 69–70, 102 S.Ct. at 2870–71.

Unless the parties consent to the bankruptcy court's jurisdiction to hear non-core matters, the bankruptcy judge has the power only to submit proposed findings of fact and conclusions of law to the district court. *In re Arnold Print Works, Inc.,* 815 F.2d at 167.

### 2. Appellants' Arguments That Contempt Proceeding Is Non–Core

■ Appellants argue that the contempt proceeding is non-core because it is not related to the restructuring of the debtor-creditor relationship. Appellants' 94–40010 Brief at 12. Further, they argue that Federal Rules of Bankruptcy Procedure 9020 and 9033 require a *de novo* review of the contempt proceeding in the district court. *Id.* at 10. The Court disagrees with both arguments.

### a. Appellants' Argument That Contempt Proceeding Is Not Related to Restructuring of Debtor–Creditor Relationship

Appellants cite no binding authority supporting their position that the contempt proceeding is a non-core proceeding. Appellants' 94–40010 Brief at 12. Appellants state that

'core' proceedings relate directly to the administration of the debtor's estate. Trial of a contempt charge is not a restructuring of the debtor-creditor relation. It entails a wholly collateral factual inquiry into an alleged contemnor's knowledge, conduct and intent. Moreover, if the "clearly erroneous" standard were to apply, a bankruptcy court would be possessed of the power to enforce all of its own determinations immune from any meaningful review by an Art. III court.

Appellants' 94–40010 Brief at 12 (quoting *Omega Equip. Corp. v. John C. Louis, Co. (In re Omega Equip. Corp.),* 51 B.R. 569, 574 (D.D.C.1985)). With all due respect to the *Omega Equipment Corp.* court, the Court disagrees.

The Court agrees that a contempt proceeding is not a direct restructuring of the debtor-creditor relationship, but a contempt proceeding does ensure enforcement of the bankruptcy court's orders—and those orders are necessary for restructuring the debtor-creditor relationship. That is, the Injunction

was necessary for MCC's reorganization plan. *See In re Monarch Capital Corporation,* No. 91–41379–JFQ, slip op. at 19 (Bankr.D.Mass. June 25, 1992) ("Confirmation Order"). In other words, the restructuring of MCC's and the various creditors' rights is accomplished, in part, through the Injunction. Enforcement of the Injunction is accomplished through the Contempt Order. The Contempt Order is, therefore, integral to the core function of restructuring the debtor's and creditors' rights. *See In re Arnold Print Works, Inc.,* 815 F.2d at 167. Even though the Contempt Order does not directly affect MCC, the First Circuit has stated that core proceedings are not restricted to claims against the estate. *Id.* at 169.

Furthermore, contrary to the *Omega Equipment Corp.* court's assertion, the Court feels that a civil contempt proceeding—as opposed to a criminal contempt proceeding—does not require a "wholly collateral factual inquiry" since it relates to the bankruptcy court's prior orders.

[A] criminal (unlike a civil) contempt prosecution for violation of a court order is " 'a separate and independent proceeding' " from, and " 'is not a part of,' " the case in which the violated order was issued....

*Griffith v. Oles (In re Hipp),* 895 F.2d 1503, 1510 (5th Cir.1990) (quoting *Bray v. United States,* 423 U.S. 73, 96 S.Ct. 307, 46 L.Ed.2d 215 (1975)). Further echoing criminal contempt, as opposed to civil contempt, is the *Omega Equipment Corp.* court's use of the terms "trial," "knowledge," and "intent": "Criminal, unlike civil, contempt requires a willful, contumacious or reckless state of mind." *In re Hipp,* 895 F.2d at 1509. A defendant charged with criminal contempt is entitled to all the protections afforded those accused of a crime. *See Eck v. Dodge Chemical Company (In re Power Recovery Sys., Inc.),* 950 F.2d 798, 802 n. 18 (1st Cir.1991). Finally, the *Omega Equipment Corp.* court asserts that the bankruptcy court's determinations are immune from meaningful review. Although there may be some validity to the assertion regarding factual determinations, conclusions of law are still reviewed *de novo. See In re DN Assocs.,* 3 F.3d at 515.

At bottom, the Court finds that the contempt proceeding was related to the restructuring of the debtor-creditor relationship.

b. Appellants' Argument That Rules 9020 and 9033 Require *De Novo* Review

Rule 9020(c) of the Federal Rules of Bankruptcy Procedure states:

> The [contempt] order [entered by a bankruptcy court] shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein *serves and files objections prepared in the manner provided in Rule 9033(b).* If timely objections are filed, the *order shall be reviewed as provided in Rule 9033.*

(Emphasis added). Federal Rule of Bankruptcy Procedure 9033(d) establishes the standard of review:

> The district judge shall make a *de novo review* upon the record or, after additional evidence, *of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made* in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

(Emphasis added). Appellants contend that these two rules require that the review of a contempt order is via objections to the bankruptcy court followed by a *de novo* review in the district court. Appellants' 94–40010 Brief at 13–14. Appellants believe that such a reading is constitutionally required. *Id.* at 14. Although appellants' interpretation of these rules is reasonable, the Court disagrees.

Under appellants' interpretation, all contempt orders would be subject to these two

rules. By necessity then, all contempt proceedings would be non-core proceedings. *See* Fed.R.Bankr.P. 9033. The Court disagrees, instead concluding that a contempt order may be—and in this case is—a core proceeding. In addition to being necessary for the restructuring of the debtor's and creditors' rights, *see supra*, the Contempt Order implicated no private, state-created rights, the proceeding giving rise to the contempt proceeding was itself core, and a First Circuit opinion is consistent to such a conclusion.[1]

(i) Contempt Proceeding Implicates No Private, State–Created Rights

As stated above, the Supreme Court has held that core proceedings do not implicate any private, state-created rights, while non-core proceedings do. *See Marathon Pipe Line Co.,* 458 U.S. at 69–70, 102 S.Ct. at 2870–71. The issue before this Court concerns the Bankruptcy Court's power to issue a contempt order for an alleged violation of its Injunction. Simply put, there is no private, state-created right at issue in the case. Rather, the Bankruptcy Court's contempt power is expressly stated in Rule 9020 of the Federal Rules of Bankruptcy Procedure as well as implicitly in 11 U.S.C. section 105.[2] Fed.R.Bankr.P. 9020; 11 U.S.C. § 105(a). Confusion arises because the Injunction—upon which the Contempt Order operates—prohibited appellants' state court action. The state court action may be a private, state-created right—and, thus, may be non-core—since it is between private parties and concerns improper investments. Contempt Order at 4. However, for the moment, the state court action is not at issue.

(ii) Proceeding Giving Rise to Contempt Proceeding Was Core Proceeding

■ The issue of whether a contempt proceeding that arises out of a core proceeding is itself core has divided the Circuits. *Com-*

---

1. The Court agrees that in a non-core contempt proceeding, Rules 9020 and 9033 would apply. However, in a core contempt proceeding, as is the case here, the procedure for review is under Federal Rule of Bankruptcy Procedure 8001.

2. The Court recognizes that there is disagreement regarding bankruptcy courts' contempt

power, *see Plastiras v. Idell (In re Sequoia Auto Brokers Ltd.),* 827 F.2d 1281, 1291 (9th Cir.1987) (bankruptcy courts do not have contempt power), but the First Circuit has stated that bankruptcy courts have contempt power. *See In re Power Recovery Sys., Inc.,* 950 F.2d at 802.

*pare Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 448 (10th Cir.1990) (holding civil contempt proceedings arising out of core matters are themselves core matters) *with In re Sequoia Auto Brokers Ltd.*, 827 F.2d at 1289 (rejecting argument that contempt proceedings are core matters if they arise out of core matters). Predictably, the lower courts have divided on the issue as well. *Compare Haile v. New York State Higher Educ. Servs. Corp.*, 90 B.R. 51, 54 (W.D.N.Y.1988) (holding contempt proceedings arising out of core matters are themselves core matters); *In re Crum*, 55 B.R. 455, 458–59 (Bankr.M.D.Fla. 1985) (same) *with In re Omega Equipment Corp.*, 51 B.R. at 573–74 (rejecting argument that contempt proceedings arising out of core matters are themselves core matters); *In re MAB Foods, Inc.*, 49 B.R. 73, 75 (E.D.N.Y. 1985) (same). The Court aligns itself with those courts that have adopted the assertion that if the proceeding from which the contempt proceeding arose was "core" in nature, the contempt proceeding itself is a core proceeding. Common sense guides the Court's reasoning. That is, if a bankruptcy court's order is at the core of the bankruptcy proceeding and is integral to the restructuring of the debtor-creditors' rights, any contempt order regarding the enforcement of the order would also be integral to the restructuring of the debtor-creditors' rights. In other words, if an order is at the core of the bankruptcy proceeding, the enforcement of the order must also be at the core of the bankruptcy proceeding.

Returning to the case at bar, the contempt proceeding arose from a core proceeding. The contempt proceeding stemmed from the alleged violation of the Injunction, which was necessary for a successful Plan of Reorganization. At the least, the Injunction regarded the administration of the estate, regarded the confirmation of the plan, and affected the adjustment of the debtor-creditor relationship. Thus, the Injunction was part of the core bankruptcy proceedings. *See* 28 U.S.C. §§ 157(b)(2)(A), (L), (O). Since the contempt proceeding arose from the alleged violation of the Injunction, it arose out of the underlying core proceedings.

### (iii) *Power Recovery Systems* Supports This Court's Conclusions

The Court's interpretation that Rules 9020 and 9033 do not require a *de novo* review by the district court is consistent with the First Circuit's opinion in *Power Recovery Systems*. In that case, the court stated that it "must uphold the factual findings of the bankruptcy court, as affirmed by the district court, unless they are clearly erroneous." *In re Power Recovery Sys., Inc.*, 950 F.2d at 802. Although the First Circuit cited the clearly erroneous standard for its review of the district court's findings, the First Circuit specifically noted the district court's holding. *Id.* at 802 n. 13. That holding, amongst other things, was that the bankruptcy court's findings of fact supporting the contempt order were not clearly erroneous. *Id.* Although the First Circuit relegated the district court's holding to a footnote, it probably would have at least commented on the standard of review had it disagreed. Furthermore, in support of its application of the clearly erroneous standard, the First Circuit cited Federal Rule of Civil Procedure 52(a)—the standard of review for findings of fact by the district court. *Id.* at 802 n. 14. The court could have stopped there, since it was in fact reviewing the district court's findings. But it went further and also cited Federal Rule of Bankruptcy Procedure 8013—the standard of review for findings of fact in proceedings appealed from the bankruptcy court to the district court. *Id.* The court noted that the Advisory Committee Note to Rule 8013 states that 8013 gives fact findings the same weight as Federal Rule of Civil Procedure 52(a) gives for district judges; that is, the reviewing court applies the clearly erroneous standard. *Id.*

### (iv) Adopting Appellants' Interpretation Is Not Constitutionally Required

Appellants also argue that their interpretation of Rules 9020 and 9033 is constitutionally required. Appellants' 94–40010 Brief at 14. Their argument is that because the bankruptcy court's contempt power is constitutionally questionable, Rules 9020 and 9033 provide a buffer since those rules require that bankruptcy courts merely make proposed findings of fact and conclusions of law.

*Id.* at 16. Again, the First Circuit has stated that bankruptcy courts are vested with contempt power. *See In re Power Recovery Sys., Inc.*, 950 F.2d at 802. To so conclude, the First Circuit must have believed that the bankruptcy court's contempt power is constitutional. As such, appellants' argument is without merit.

3. The Bankruptcy Court's Determination of the Procedure for Review of the Contempt Order

Before leaving the issue of the proper procedure for review of the Contempt Order, the Court wants to address appellants' argument that the Bankruptcy Court lacked the power, authority or jurisdiction to rule on the motions to dismiss and the motion for leave. Appellants' 94–40010 Brief at 6. As support for this position, appellants refer to Federal Rule of Bankruptcy Procedure 9033. *Id.* at 7. That rule states, in pertinent part, that in non-core proceedings a district judge shall make a *de novo* review of the bankruptcy judge's findings of fact or conclusions of law to which specific objection has been made. Fed.R.Bankr.P. 9033(d). Appellants claim that once a party makes objections, the bankruptcy court is out of the picture, save some ministerial matters. Appellants' 94–40010 Brief at 8. Thus, appellants believe that the Bankruptcy Court had no power to rule on R & G's motion to dismiss appellants' objections. *Id.*

Before the application of Federal Rule of Bankruptcy 9033 is triggered, there must be a determination that the proceeding under review is non-core. *See* Fed.R.Bankr.P. 9033. "The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding...." 28 U.S.C. § 157(b)(3). Adopting appellants' view would require a bankruptcy court to determine that the proceeding at issue is core—as required under 28 U.S.C. § 157(b)(3)—and then would prohibit the bankruptcy court from carrying out the natural consequences of its determination—dismissal of the objections that are wrongly before it. The Court rejects this concept. The better approach was exhibited by the Bankruptcy Court in this case; name-

ly, determining whether the proceeding at issue was core and, because it was, dismissing the objections.

The flip side of the same discussion is appellants' other claim that the District Court, and not the Bankruptcy Court, should have ruled on their motion to dismiss R & G's cross-appeal. Appellants' 94–40010 Brief at 8. Again, the Bankruptcy Court had the task of determining whether the proceeding at issue was core or non-core. Being vested of that power, it would make little sense to deprive the Bankruptcy Court of the natural consequences of its decision. Since the Bankruptcy Court determined that the proceeding was core—so that review was through appeal—the Bankruptcy Court was correct in following through with the natural consequences of its decision; namely, denying appellants' motion to dismiss R & G's cross-appeal.

In sum, the Court concludes that contempt proceedings in bankruptcy court may be either core or non-core. In this case, the contempt proceeding was a core proceeding. As such, the proper procedure for review of the contempt finding is through an appeal to this Court. *See* 28 U.S.C. § 158. Accordingly, appellants' filing of objections to the Bankruptcy Court was inappropriate. Therefore, in its order of December 16, 1993, the Bankruptcy Court correctly granted R & G's motion to dismiss appellants' objections and correctly denied appellants' motion to dismiss R & G's cross-appeal. Order of December 16, 1993 at 1. As for the Bankruptcy Court's denial of appellants' motion to file a reply memorandum in support of their objections, the point is moot since the objections were inappropriate. *Id.*

B. *Bankruptcy Court's Power to Issue a Contempt Order*

(*Civil Action No. 94–40010–FHF*)

■ Having determined that the proper procedure for review of a bankruptcy court's contempt order is through an appeal to the district court, the Court now turns to the Bankruptcy Court's power to issue the Contempt Order. In reviewing bankruptcy proceedings under Federal Rule of Bankruptcy 8013, the Court reviews conclusions of law *de*

*novo* and findings of fact under a clearly erroneous standard. *See In re DN Assocs.*, 3 F.3d at 515.

In *Power Recovery Systems*, the First Circuit stated "It is well-settled law that bankruptcy courts are vested with contempt power." *In re Power Recovery Sys., Inc.*, 950 F.2d at 802 (citing *Fernos–Lopez v. United States Dist. Court*, 599 F.2d 1087, 1090 (1st Cir.), *cert. denied*, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979)). Appellants contend that this statement regarding bankruptcy court's contempt power is unpersuasive because the *Fernos–Lopez* case was decided in 1979, before the United States Supreme Court decided *Marathon Pipe Line Co.* Appellants' 94–40010 Brief at 10 n. 8. Appellants overlook the fact that, regardless of the source cited therein, the controlling case upon this Court is *Power Recovery Systems*. Furthermore, Bankruptcy Rule 9020(b) provides that a bankruptcy judge may issue an order of contempt if proper notice is given. Fed.R.Bankr.P. 9020(b). *But see In re Sequoia Auto Brokers Ltd.*, 827 F.2d at 1291 (holding that Congress has not conferred civil contempt power on bankruptcy judges). Thus, the Bankruptcy Court had the power to issue the Contempt Order.[3]

### C. *Examination of Contempt Order and Underlying Injunction*

#### (Civil Action No. 94–40011–FHF)

Since there is no question that the Bankruptcy Court had the power to hold appellants in contempt, the Court turns to a discussion of whether they were, in fact, in contempt. In determining such, the Court will first discuss the threshold issue of whether appellants are procedurally barred from attacking the Injunction. Then, the Court will consider the Bankruptcy Court's authority to enjoin non-debtor third party actions and also whether the Injunction ap-

plied to the state court action. Lastly, the Court will examine the appropriateness of the Contempt Order.

### 1. Procedural Barriers to Review of the Injunction

■■■■■ "[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed." *Maggio v. Zeitz*, 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948). Furthermore, "[t]he earlier order may not be impeached, avoided or attacked in the later proceedings and no relief can be sought against its command." *United States v. Allee*, 888 F.2d 208, 211 (1st Cir.1989) (quoting *Maggio*, 333 U.S. at 74, 68 S.Ct. at 410–11). R & G claims that appellants are violating these rules by challenging the Contempt Order and by asking this Court to reconsider the underlying Injunction. R & G's 94–40011 Brief at 20–21. The Bankruptcy Court agreed with R & G, stating that the Injunction is res judicata since appellants had not appealed from it. Contempt Order at 7.

■■■■■ Res judicata bars relitigation of a claim that has been adjudicated in an earlier action involving the same parties or their privies. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980); *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 755 (1st Cir.1994); *Chestnut Hill Dev. Corp. v. Otis Elevator Co.*, 739 F.Supp. 692, 696 (D.Mass.1990). Three elements are required for res judicata: (1) identity or privity of parties to the present and prior actions; (2) identity of the causes of action; and (3) a prior final judgment on the merits. *See Gonzalez*, 27 F.3d at 755; *Chestnut Hill Dev. Corp.*, 739 F.Supp. at 696.

Appellants argue that res judicata does not apply here. Appellants' 94–40011 Brief at 28–29. Appellants contend that R & G was

---

**3.** The circuits have been more reluctant to grant bankruptcy courts any criminal contempt power. *See In re Hipp*, 895 F.2d at 1509 (bankruptcy courts have no criminal contempt power); *In re Sequoia Auto Brokers Ltd.*, 827 F.2d at 1291 (bankruptcy courts do not have contempt power, criminal or civil); *cf. Rafoth v. Nat'l Union Fire Ins. Co. (In re Baker & Getty Fin. Servs., Inc.)*, 954 F.2d 1169, 1173 (6th Cir.1992) (holding that bankruptcy courts have no authority to conduct

jury trials, a prerequisite to a finding of criminal contempt); *In re Grabill Corp.*, 967 F.2d 1152, 1158 (7th Cir.1992) (same); *In re United Missouri Bank*, 901 F.2d 1449, 1457 (8th Cir.1990) (same); *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380, 392 (10th Cir.1990) (same). However, there is no question that the Contempt Order at issue here was civil. *See* Contempt Order.

not a party to the 1992 proceedings. *Id.* Moreover, appellants state that they did not appeal the Injunction because they had no objection to it as it issued. Appellants' 94–40011 Brief at 28–29. In applying the Injunction, appellants argue, the Bankruptcy Court impermissibly expanded its scope. *Id.* Thus, appellants believe that the issue before the Bankruptcy Court in 1992, when the Injunction issued, differed from the issue before the Bankruptcy Court in 1993, when the Injunction was allegedly expanded. *Id.*

The Court will not deny appellants relief because of res judicata. Whether R & G was a party, or at least in privity with a party, to the Chapter 11 case is unclear. *Compare* Appellants' 94–40011 Reply Brief at 16 *with* R & G's 94–40011 Brief at 23–24. However, resolution of that issue is not necessary since the Court agrees with appellants' argument that there is no identity of causes of action between the 1992 proceedings (the issuance of the Injunction) and the 1993 proceedings (the interpretation of the Injunction by way of the Contempt Order). Appellants do not challenge the Bankruptcy Court's authority to enter the Injunction, nor do they challenge the Injunction as issued. Appellants' Reply 94–40011 Brief at 15. Rather, appellants challenge the Bankruptcy Court's alleged expansion of the Injunction. *Id.*

 Even if the res judicata criteria were met and the doctrine barred relitigation of the Injunction, the Court would still reject its application:

> It is well settled, however, that even where the technical requirements of res judicata have been established, a court may nonetheless refuse to apply the doctrine.... Because the doctrine of res judicata is grounded upon considerations of fairness and efficient judicial administration, the doctrine should not be applied rigidly where such interests would not be served.

*See Chestnut Hill Dev. Corp.,* 739 F.Supp. at 696 (citations omitted). Although the Court may be hindered because of its necessary reliance on the "cold record" alone, it nevertheless accepts appellants' claim that they agreed with the Injunction as issued. They only contest the Injunction now that the Bankruptcy Court allegedly misinterpreted

and misapplied it. The Court believes that it would be unfair to deny appellants the opportunity to convince the Court that the Bankruptcy Court did in fact misinterpret and misapply the Injunction.

R & G also asserts that judicial estoppel prohibits appellants from now challenging the Injunction. R & G's 94–40011 Brief at 30. R & G claims that appellants cannot now take a "position inconsistent with one successfully and unequivocally asserted by that same party in a prior proceeding." *Id.* at 31–32 (quoting *Brewer v. Madigan,* 945 F.2d 449, 455 (1st Cir.1991)). R & G claims that appellants are in fact taking self-contradicting positions. R & G's 94–40011 Brief at 32. However, as mentioned above, the Court believes that appellants' current position is in response to the Bankruptcy Court's alleged expansion of the terms of the Injunction. In sum, the Court finds that there are no procedural barriers that will prohibit review of the Injunction.

2. Bankruptcy Court's Authority to Enjoin Non–Debtor Third Party Actions and the Applicability of the Underlying Injunction to the State Court Action

Because of the complex reorganization of MCC, the Bankruptcy Court determined that an injunction was necessary to get the parties to provide consideration under the Plan, to release MLIC from rehabilitation, to ensure equal distribution to creditors, to prevent costly litigation, and to achieve the maximum available pay-out to the creditors. *See* Confirmation Order at 18–21. The Injunction provided:

> In addition to the discharge provided by Section 1141 of the Bankruptcy Code and to supplement the discharge provisions of Article VI.A of the Plan, this Order constitutes an injunction against all persons (other than the FDIC as Receiver) from taking any of the following actions (other than an action brought to enforce any right or obligation under the Plan or the Settlement Agreement):
>
> a. commencement or continuation of any action or proceeding arising from or related to a claim against the MCC

42

against or affecting or [sic] any property of MCC, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing, except that such injunction will not prevent (i) New Realty Co. from prosecuting retained causes of action of the Debtor, (ii) MLIC or any member of the MLIC Group from prosecuting claims against each other, (iii) any of the Retained Companies from prosecuting claims against each other, (iv) the prosecution of any claim on a contract against any of MLIC, the MLIC Group and the Retained Companies where such entity is a primary obligor under such contract, or (v) prosecution of any contract claim against MLIC or Annuity Co. under the structured settlement annuities; and

b. commencement or continuation of any action or proceeding arising from or related to a claim against the Debtor of this Chapter 11 case, the MLIC Receivership or the operations of the Debtor against or affecting any of New Holding Co., New Realty Co., MLIC, the Agent, the 235 Banks, the Trustee, the Creditors' Committee (in such capacity), the MLIC Receiver and their respective officers, directors, employees, attorneys, agents, successors and assigns other than a claim to enforce obligations under the Plan or the Settlement Agreement; provided that this release shall not apply (i) to the claims asserted against Monarch Narragansett Corporation in that certain civil action captioned *Daniel K. Dowling, et al. v. Narragansett Capital Corporation, et al.*, Case No. 87–0213–T [735 F.Supp. 1105 (D.R.I.1990) ] (United States District Court for the District of Rhode Island), (ii) to the claims, if any, asserted by MLIC or any member of the MLIC Group against each other, (iii) to the claims, if any, asserted by any of the Retained Companies against each other, (iv) the contractual claims, if any, against any of MLIC, the MLIC Group and the Retained Companies where such entity is a primary obligor under such contract, or (v) the contractual claims, if

any, against MLIC or Annuity Co. under the Structured Settlement Annuities.

Confirmation Order at 19–20.

a. Bankruptcy Court's Authority to Enjoin Non–Debtor Third Parties' Actions

■ Section 105 states: "The [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts have interpreted this section as granting bankruptcy courts, among other things, the authority to enjoin actions that might adversely affect the debtor's ability to formulate a reorganization plan. *See Johns–Manville Corp. v. Asbestos Litig. Group (In re Johns–Manville Corp.)*, 40 B.R. 219, 226 (S.D.N.Y.1984). Creating tension with section 105, however, is section 524, which states, "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). These two sections have caused debate as to whether bankruptcy courts have the authority to enjoin non-debtor third party actions. *Compare Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346, 1351 (5th Cir.1989) (discharge in bankruptcy will not affect liability of non-debtor third party) *and Union Carbide Corp. v. Newboles*, 686 F.2d 593, 595 (7th Cir.1982) (creditor's approval of bankruptcy plan does not discharge bankrupt's guarantors) *with In re A.H. Robins Co.*, 880 F.2d 694, 702 (4th Cir.) (bankruptcy court may enjoin suits if necessary for reorganization plan), *cert. denied sub nom. Menard–Sanford v. A.H. Robins Co.*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989) *and MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89, 93 (2d Cir.) (section 105 allows bankruptcy courts to enjoin suits that might impede the reorganization process), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

■ Appellants' first argument revolves around this debate, and they align themselves with the courts that have held that

discharge of the debtor does not discharge non-debtor third parties. Appellants' 94–40011 Brief at 18. The Court disagrees with appellants' position. "[Section 524] does not affect the ability of the court to issue a permanent injunction under § 105(a) ... Section 524(e) contains no language of prohibition and should not be interpreted to limit the court's power under § 105(a)." *In re Heron, Burchette, Ruckert & Rothwell*, 148 B.R. 660, 687 (Bankr.D.D.C.1992). This position is consistent with the First Circuit's opinion in *In re G.S.F. Corp.*, where the court stated that it is an extraordinary exercise of discretion, but bankruptcy courts may enjoin non-debtor third party actions if such actions would adversely affect the debtor's estate. *See In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir.1991).

The Bankruptcy Court determined that the threat of non-debtor third party actions would have prevented acceptance of the Plan. *See* Confirmation Order at 18–21. The debtor's estate, therefore, would have been adversely affected had the Injunction not issued. Thus, the Court finds that the Bankruptcy Court was warranted in enjoining non-debtor third party actions.

b. Applicability of the Underlying Injunction to the State Court Action

Appellants contend that the Injunction does not apply to the state court action. Appellants argue that protection under the Injunction was conditioned on contribution to the Plan, and R & G did not contribute. Appellants' 94–40011 Brief at 23. Additionally, appellants contend that the state court action is not barred by the Injunction because the state court action would not affect MCC's property. Appellants' 94–40011 Brief at 37–38. To address these arguments, the Court must scrutinize the Injunction.

(i) Protection Conditioned on Contribution

[redacted] The Court finds that paragraph (b) of the Injunction conditioned protection on contribution to the Plan. The Court resolves that the entities enumerated in paragraph (b) of the Injunction did, in fact, contribute to the Plan. Although R & G attempts to align itself with the entities listed in paragraph (b), R & G's 94–40011 Brief at 44, the Court rejects R & G's argument.

Although the Bankruptcy Court found that paragraph (b) of the Injunction includes R & G through the term "attorneys," Contempt Order at 6, an objective reading of the Injunction as it issued suggests otherwise. That is, the Bankruptcy Court, in issuing the Injunction, conditioned protection of non-debtor third parties on contributions to the Plan. Appellants' 94–40011 Brief at 23. In issuing the Contempt Order, however, the Court finds that the Bankruptcy Court expanded the scope of protection under the Injunction.

When issuing the Injunction, the Bankruptcy Court looked to the non-debtors' contributions as rationale for issuing the Injunction:

> Refusing to enter the Injunction as part of the Confirmation Order would cause the 235 Banks, MLIC and the MLIC Group to withdraw from their commitments to provide consideration under the Plan.... In addition, without the Injunction the 235 Banks, MLIC and the MLIC Group would not give the releases that they are giving under the Plan....

Confirmation Order at 20. Moreover, the Bankruptcy Court, in discussing its authority to issue the Injunction, distinguished cases whereby parties protected by injunctions had not contributed to the reorganization plan. *Id.* at 25–26. The Bankruptcy Court reasoned,

> In this case, the persons protected by the Injunction have contributed substantial amounts to the Plan ... However [in an inapposite case], the non-debtor third party had not contributed to the funding of the plan, nor was the injunction shown essential to that plan. In this case, however, the persons protected by the Injunction are the principal contributors of consideration to the Plan. Those persons would not contribute without the Injunction.

*Id.* Because the contributors of consideration to the Plan would not have contributed without the Injunction, failure to issue the Injunction would have adversely affected the debtor's estate. Thus, the Bankruptcy Court's reasoning for issuance of the Injunc-

tion is consistent with the First Circuit. "In the ordinary case involving an injunction against a third party action, there must be some effect on the debtor's estate stemming from the action before there is bankruptcy court jurisdiction to enjoin it." *In re G.S.F. Corp.*, 938 F.2d at 1474.

R & G does not contend that it contributed to the Plan. R & G argues that the Plan protects a variety of non-debtor third parties—including itself—who did not contribute to the reorganization.[4] *See* R & G's 94–40011 Brief at 38–39. The entities to which R & G refers are those listed in paragraph (b) of the Injunction—the respective officers, directors, employees, attorneys, agents, successors and assigns of New Holding Co., New Realty Co., MLIC, the Agent, the 235 Banks, the Trustee, the Creditors' Committee, the MLIC Receiver. The Court believes, however, that these entities received protection under the Injunction to ensure their continued involvement with, and participation in, the reorganization. *See Securities and Exchange Comm'n v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir.1992), *cert. dismissed sub nom. Hart Holding Co. v. Drexel Burnham Lambert Group, Inc.*, —— U.S. ——, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993). Thus, these entities did contribute consideration to the reorganization—namely, their involvement. This interpretation is consistent with the Settlement Agreement, the precursor to the Confirmation Order. The Settlement Agreement stated, among other things, that the "Terms and Provisions of this Agreement are intended solely for the benefit of each party hereto and their respective successors or permitted assigns, and it is not the intention of the

parties to confer third-party beneficiary rights upon any other person." Settlement Agreement at 43.

The Court cannot categorize R & G with the paragraph (b) entities. Consideration for these entities was their continued involvement with the Reorganization. Appellants' 94–40011 Brief at 27 (quoting Second Amended Plan of Reorganization that contributions were to be prospective). But R & G had not been MLIC's attorneys since May 30, 1991, a full twelve months prior to issuance of the Injunction on June 25, 1992. *See* Appellants' 94–40011 Reply Brief at 22; R & G's 94–40011 Brief at 45. Thus, the Court finds that R & G did not provide consideration, as did the other paragraph (b) entities and, therefore, paragraph (b) does not protect R & G.[5]

Moving on, appellants would have the Court adopt the position that the entire Injunction, as issued, conditioned protection upon contribution to the Plan. Appellants' 94–40011 Brief at 23. But only paragraph (b) lists those entities that provided consideration under the Plan; paragraph (a) lists no entities. Confirmation Order at 19–20. Because the entities that provided consideration are enumerated in paragraph (b) only, the Court determines that protection, under paragraph (b) only, was conditioned on contribution to the Plan.

(ii) Effect of State Court Action
on Debtor's Property

■ Appellants next argue that paragraph (a) of the Injunction does not prohibit the state court action because the state court action would not affect the debtor's property, or the transferees or successors in interest to

---

4. In arguing that the Bankruptcy Court intended to protect certain non-contributing—in addition to contributing—non-debtor third parties, R & G cites a memorandum submitted to the Bankruptcy Court by the 235 Banks. The Court, however, gives controlling weight to the actual language of the Bankruptcy Court's Confirmation Order.

5. The Court recognizes that the Bankruptcy Court ultimately found that R & G was intended to be covered by paragraph (b) of the Injunction. Contempt Order at 6. However, the Court finds validity to appellants' argument that the Bankruptcy Court expanded the scope of the Injunction. Appellants' 94–40011 Brief at 23. Al-

though in the original Confirmation Order the Bankruptcy Court conditioned protection under the Injunction on contribution to the Plan, in the Contempt Order, the Bankruptcy Court stated that the Injunction protects parties who made no financial contribution to the plan. Contempt Order at 7. Additionally, in the Confirmation Order, the Bankruptcy Court stated which specific claims were barred under the Injunction, whereas in the Contempt Order, the Bankruptcy Court declared that it intended to achieve complete repose on all matters related to the various claims and counterclaims. *Id.*

such property. Appellants' 94–40011 Brief at 37–38. R & G contends, on the other hand, that the state court action would affect MCC's property, or that of the transferees or the successors in interest, because R & G will assert counterclaims against MLIC as well as third-party claims against the 235 Banks, the directors and the officers of MCC and MLIC. R & G's 94–40011 Brief at 43.

The issue the Court faces is determining whether the state court action will affect MCC's property, or that of the transferees or the successors in interest, without litigating the state court action. After considering this question, the Court resolves that allowing the action to proceed would, in fact, affect MCC's property, or that of the transferees or successors in interest. Appellants claim that R & G's threats of filing counterclaims, cross-claims and third-party claims are empty. Appellants' 94–40011 Reply Brief at 4. As support for this, appellants state that R & G has yet to file such, and R & G has yet to reveal the facts or theories upon which such claims would be based. *Id.* However, the state court action has been stayed since early in the proceeding. Thus, the Court finds that any inaction on the part of R & G is irrelevant.

Appellants also claim that R & G cannot bring the threatened counterclaims, cross-claims and third-party claims because the Injunction would prohibit such. Appellants' 94–40011 Reply Brief at 6–9. Further, appellants contend that R & G would not have any indemnification and contribution claims, although R & G states that it would. *Id.* Upon review, the Court cannot adopt appellants' view. Simply put, the Court will not, especially at such an early stage of the state court action, accept the position that R & G does not have any valid counterclaims, cross-claims or third-party claims. To do so would allow R & G to be sued while denying it the opportunity to fully defend itself.

Because the Court finds that the state court action would ultimately affect the debtor's property, or that of the transferees or successors in interest, the Court rejects appellants' argument that the Bankruptcy Court misinterpreted and misapplied the phrase "arising from or related to a claim

against" the debtor, as found in both paragraphs (a) and (b) of the Injunction. Appellants' 94–40011 Brief at 36; *see also* Confirmation Order at 19–20. Appellants argue that these terms have specific meaning in bankruptcy law, and the Injunction, therefore, does not apply to the state court action. Appellants' 94–40011 Brief at 36. Appellants cite *In re G.S.F. Corp.,* 938 F.2d at 1475, for the proposition that a claim is "related to" a debtor if "the outcome could alter the debtor's rights, liabilities, options or freedom of action . . . and it in any way impacts the handling of the debtor's estate." Appellants' 94–40011 Brief at 37. The state court action, appellants contend, cannot alter MCC's rights or in any way impact MCC's estate. *Id.* Thus, the argument goes, the state court action is not related to a claim against MCC.

The Court is not persuaded. As discussed above, the Court believes that the state court action would ultimately affect MCC's property, or that of the transferees of, or successors in interest to, such property. Thus, the Court finds that the state court action is related to a claim against the debtor. Further, the argument fails because it is incomplete: it addresses the "related to" terminology of the Injunction, but it does not address the "arising from" portion. Finally, even if the Court agreed with appellants' argument, it would fail since appellants did not raise it before the Bankruptcy Court, and the Court will not now consider it for the first time. *See Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.),* 993 F.2d 915, 935 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993); *LaRoche v. Amoskeag Bank (In re LaRoche),* 969 F.2d 1299, 1305 (1st Cir.1992).

At bottom, the Court concludes that the Bankruptcy Court conditioned protection, under paragraph (b) of the Injunction only, on contribution to the Plan. Thus, R & G is not protected under that section. However, the Court also concludes that the state court action would ultimately affect MCC's property, or that of the transferees or successors in interest. Accordingly, R & G is protected by paragraph (a) of the Injunction, and the state court action cannot proceed.

3. Appropriateness of the Contempt Order

The Court reiterates that the state court action is barred by the Injunction. While paragraph (b) of the Injunction does not apply to the state court action, paragraph (a) does. The Court notes that the conjunctive "and" joins the two paragraphs. Confirmation Order at 19–20. However, the opening paragraph of the Injunction states that all persons are barred from taking "any of" the following actions. *Id.* Thus, even if only one of the two paragraphs applies to the state court action, the Injunction operates to bar the state court action.

■■■■ Even though the Injunction bars the state court action, the Court finds that the Bankruptcy Court erred in holding appellants in contempt. *See* Contempt Order. Court orders must "describe in reasonable detail just what acts they forbid." *NBA Properties, Inc. v. Gold,* 895 F.2d 30, 32 (1st Cir.1990) (quoting Fed.R.Civ.P. 65(d)). Here, the scope of the Injunction was unclear, resulting in this dispute. The precise meaning of the term "attorneys" was vague. Furthermore, the phrase "arising from or related to" was ambiguous. The Bankruptcy Court acknowledged such:

> Although the injunction seems relatively clear to me, its scope has been the subject of good faith differences between the parties. I do not believe its provisions are sufficiently specific and definite to warrant imposition of sanctions for this violation.

Contempt Order at 7. Although when making this statement the Bankruptcy Court was considering the imposition of sanctions, the point is clear: certain provisions of the Injunction do not describe in reasonable detail exactly what acts are forbidden. Thus, the Court finds that appellants should not have been held in contempt.

Since the Court finds that appellants were not in contempt, the Court does not need to address the issue of whether appellant David Whitt was in contempt. For the same reason, the Court needs not address R & G's claim that the Bankruptcy Court should have imposed sanctions against appellants. R & G's 94–40011 Brief at 49. Finally, after consideration of the detailed and thorough briefs submitted by the parties, the Court sees no reason to grant appellants' request for oral argument.

## IV. CONCLUSION

For all the reasons discussed above, the Court AFFIRMS the Bankruptcy Court's December 16, 1993 Order as briefed in Civil Action No. 94–40010–FHF. Regarding Civil Action No. 94–40011–FHF, the Court REVERSES the Bankruptcy Court's October 15, 1993 Contempt Order. In so doing, however, the Court AFFIRMS the Bankruptcy Court's conclusion that the state court action is barred by the Injunction. Additionally, the Court AFFIRMS the Bankruptcy Court's refusal to impose sanctions. Finally, the Court DENIES appellants' request for oral argument.

It is So Ordered.