USCA1 Opinion

 

 November 22, 1995 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-2173 MONARCH LIFE INSURANCE COMPANY, ET AL., Appellants, v. ROPES & GRAY, Appellee.  ____________________ No. 94-2200 MONARCH LIFE INSURANCE COMPANY, ET AL., Appellees, v. ROPES & GRAY, Appellant.  ____________________ ERRATA SHEET The opinion of this Court, issued September 13, 1995, is amended as follows: p.9, 1, l.14: "(Bankr. D.D.C. 1992))." in place of "(Bankr. D. Colo. 1992))." UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-2173 MONARCH LIFE INSURANCE COMPANY, ET AL., Appellants, v. ROPES & GRAY, Appellee.  ____________________ No. 94-2200 MONARCH LIFE INSURANCE COMPANY, ET AL., Appellees, v. ROPES & GRAY, Appellant.  ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Frank H. Freedman, Senior U.S. District Judge] __________________________  ____________________ Torruella, Chief Judge, ___________ Cyr and Stahl, Circuit Judges. ______________  ____________________ 3 Bruce E. Baty, with whom Christopher D. Schneider, Morrison & _____________ _________________________ ___________ Hecker, Charles K. Bergin, Jr., and Robinson, Donovan, Madden & Barry, ______ ______________________ __________________________________ P.C. were on brief for Monarch Life Insurance Company. ____ John K. Villa, with whom Nicole K. Seligman, Philip J. Deutch, ______________ __________________ ________________ Williams & Connolly, Charles S. Cohen and Egan, Flanagan and Cohen, ____________________ _________________ __________________________ P.C. were on brief for Ropes & Gray. ____  ____________________ September 13, 1995  ____________________ 2 CYR, Circuit Judge. Following an unsuccessful CYR, Circuit Judge. ______________ intermediate appeal to the district court, Monarch Life Insurance Co. ("Monarch Life") continues to press its challenge to a bankruptcy court order enjoining its prosecution of a legal malpractice action in Massachusetts Superior Court against its former counsel, the law firm of Ropes & Gray. The bankruptcy court determined that the Monarch Life action violated a permanent injunction incorporated in the confirmed reorganization plan of its parent corporation, Monarch Capital Corporation ("Monarch Capital"). We now affirm the district court on the ground that Monarch Life is collaterally estopped from asserting a state court challenge to the bankruptcy court's jurisdiction to enter the permanent injunction incorporated in the confirmed reorganization plan.  I I BACKGROUND BACKGROUND __________ Monarch Capital, incorporated as a holding company in 1968, marketed life and disability insurance through Monarch Life, its wholly-owned Massachusetts subsidiary,1 and developed real estate through another group of subsidiaries ("real estate subsidiaries"). Ropes & Gray provided simultaneous legal representation to Monarch Capital and its subsidiaries, including Monarch Life. In 1985, Monarch Capital established a Short-Term  ____________________ 1For simplicity sake, "Monarch Life" includes appellants Springfield Life Insurance Company and First Variable Life Insurance Company.  3 Investment Pool ("STIP"), a common bank account into which Monarch Capital's subsidiaries agreed to make daily deposits of their excess cash balances. The STIP agreement authorized Monarch Capital to borrow needed funds from the STIP at an interest rate more favorable than the market rate, and permitted the subsidiaries to recoup their STIP deposits on demand. Beginning in 1987, Monarch Capital's real estate subsidiaries began experiencing serious cash flow problems due to an abrupt economy-wide decline in real estate values. In order to prop up its failing real estate subsidiaries, Monarch Capital began to borrow heavily from the STIP deposits contributed by Monarch Life. By 1990, Monarch Life's outstanding STIP "advances" to Monarch Capital approximated $175 million. When Monarch Life learned the extent of Monarch Capital's borrowings, it unilaterally cancelled its participation in the STIP. Shortly thereafter, Monarch Life discharged Ropes & Gray as its counsel. During that same year, Monarch Capital borrowed an additional $235 million from a group of financial institutions (hereinafter: "the 235 Banks"), pledging its capital stock in Monarch Life as collateral for the loan.  In May 1991, the Massachusetts Insurance Commissioner placed Monarch Life in receivership. The receiver in turn filed an involuntary chapter 11 petition against Monarch Capital. After seven months of negotiation, the principal creditors of Monarch Capital the 235 Banks and Monarch Life proposed a plan of reorganization ("Plan"), which purported to settle or 4 release a tangle of "complex" claims and cross-claims held by and against Monarch Capital, its subsidiaries, and other creditors. In re Monarch Capital Corp., No. 91-41379-JFQ, slip op. at 9 _____________________________ (Bankr. D. Mass. June 25, 1992).2 These included Monarch Life's claim that Monarch Capital, acting in concert with the 235 Banks, had used the STIP to deplete Monarch Life's coffers, thereby placing Monarch Life in violation of state insurance regulations.3 In consideration of their mutual agreement to release claims and to make financial contributions to fund the Plan, the Plan proponents insisted on the inclusion of a permanent injunction to protect them from future lawsuits arising from or related to claims settled under the Plan.  The injunction ultimately included in the order confirming the Plan provides as follows:  In addition to the discharge provided by Section 1141 of the Bankruptcy Code and to supplement the discharge provisions of Article VI.A of the Plan, this Order constitutes an injunction against all persons ___ _______ (other than the FDIC as Receiver) from taking any of the following actions (other than an  ____________________ 2Ropes & Gray was scheduled as a creditor in the chapter 11 proceeding, but asserted no claim against Monarch Capital.  3The Plan also provided, inter alia, that (1) Monarch _____ ____ Capital would separate its insurance business (thereby creating the "Life Group") from its real estate business (thereby creating the "New Realty Group"); and (2) the 235 Banks would release their guaranty claims against Monarch Capital's subsidiaries in connection with the 1990 loan to Monarch Capital, and agree to share the Monarch Life capital stock which had been pledged as collateral for the 1990 loan with Monarch Capital's unsecured creditors. Upon confirmation of the Plan in June 1992, the 235 Banks became Monarch Life's "parent" by acquiring a clear majority of Monarch Life stock, and Monarch Life emerged from receivership. 5 action brought to enforce any right or obligation under the Plan or the Settlement Agreement):   a. commencement or continuation of any ____________ __ ____________ __ ___ action or proceeding arising from or ______ __ __________ _______ ____ __ related to a claim against [Monarch _______ __ _ _____ _______ Capital] against or affecting or [sic] any property of [Monarch Capital], or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing . . . ; and  ___ b. commencement or continuation of any ____________ __ ____________ __ ___ action or proceeding arising from or ______ __ __________ _______ ____ __ related to a claim against the Debtor of _______ __ _ _____ _______ ___ ______ this Chapter 11 case, the [Monarch Life] Receivership or the operations of the Debtor against or affecting any of New Holding Co., New Realty Co., [Monarch Life], the Agent, the 235 Banks, the Trustee, the Creditors' Committee (in such capacity), the [Monarch Life] Receiver and their respective officers, ___ _____ __________ directors, employees, attorneys, agents, _________ successors and assigns other than a claim to enforce obligations under the Plan or the Settlement Agreement . . . .4   Id. at 19-20 (emphasis added).  ___ After a hearing, at which the parties discussed whether, and to what extent, Bankruptcy Code 105(a)5 empowers a bankruptcy court to afford permanent injunctive relief which effectively grants a "discharge" to parties other than the _____ ____ ___ chapter 11 debtor, the bankruptcy court confirmed the Plan, _______ __ ______  ____________________ 4Subparagraphs (a) and (b) each list specific exceptions to the coverage of the injunction; none are material to this appeal. 5Section 105(a) provides in relevant part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. 105(a). 6 including the proposed injunction. See id. at 23-27; see also ___ ___ ___ ____ infra Appendix at pp. i-iii (containing relevant excerpts from _____ confirmation order). The bankruptcy court found that absent prompt confirmation of a chapter 11 plan, Monarch Life likely would be forced into liquidation. In re Monarch Capital Corp., ____________________________ No. 91-41379-JFQ, slip op. at 18. Monarch Life's receiver elected not to appeal the confirmation order. Monarch Life soon discovered documentary evidence allegedly establishing that Ropes & Gray simultaneously represented both Monarch Capital and Monarch Life in circumstances which suggested an inherent conflict of interest. In May 1993, Monarch Life brought suit in Massachusetts Superior Court, seeking compensatory damages for Ropes & Gray's alleged participation in Monarch Capital's private strategy to use Monarch Life's STIP contributions to prop up Monarch Capital's moribund real estate investments. Monarch Life alleged, inter _____ alia, that Monarch Capital and Ropes & Gray, in reports to ____ Massachusetts insurance regulators, deliberately concealed the nature and understated the amount of the STIP "advances" to Monarch Capital, thereby exposing Monarch Life and its directors to civil liability for Monarch Life's violation of Massachusetts insurance laws which require that insurance companies keep on hand minimum "admitted assets" to cover extant policies. Monarch Life further alleged that Ropes & Gray had deliberately concealed from Monarch Life the ongoing use of the STIP by Monarch Capital to finance its long-term real estate ventures, as well as the 7 fact that Monarch Capital had no realistic prospect of ever repaying its STIP "advances" had Monarch Life made demand.6 Ropes & Gray filed a motion for civil contempt against Monarch Life in the bankruptcy court, claiming that its state court action violated the injunctive provision in the confirmed Monarch Capital chapter 11 plan. Following a hearing on the contempt motion, the bankruptcy court determined that (1) the Monarch Life action was barred by the broad terms of both subparagraphs (a) and (b) of the injunction included in the Plan, see supra p. 6; and (2) the doctrine of res judicata precluded ___ _____ ___ ________ Monarch Life from attacking the bankruptcy court's "jurisdiction" to enter the broad-based injunction. Ropes & Gray v. Monarch _____________ _______ Life Ins. Co. (In re Monarch Capital Corp.), No. 91-41379-JFQ, at _____________ ___________________________ 6-7 (Bankr. D. Mass. Oct. 15, 1993). The bankruptcy court held Monarch Life in civil contempt but refused to impose sanctions because the terms of the injunctive provision in the confirmed Plan were not "sufficiently specific and definite" to permit a finding that the violation had been deliberate or undertaken in bad faith. Id. at 7. On intermediate appeal, the district court ___ affirmed the bankruptcy court decision. Ropes & Gray v. Monarch ____________ _______ Life Ins. Co. (In re Monarch Capital Corp.), 173 B.R. 31 (D. ______________ _____________________________  ____________________ 6Ropes & Gray responded that (1) Monarch Capital, as the parent of Monarch Life, had the unfettered legal right to use its subsidiaries' assets as it wished; (2) Ropes & Gray had not learned of the STIP advances until 1989, by which time the outstanding balances were already significant; and (3) in order to protect Monarch Life's interests, Ropes & Gray at that time advised Monarch Capital not to "borrow" any additional STIP funds. 8 Mass. 1994).7 II II DISCUSSION DISCUSSION __________ Monarch Life contends, as a matter of law, that the __ _ ______ __ ___ permanent injunctive provision included in the confirmed Plan cannot extinguish actions against third parties such as Ropes & Gray, since bankruptcy courts have no "jurisdiction" or power to __ ____________ _____ "discharge" (1) debts other than those of the chapter 11 debtor, see Brief for Appellants at 12-16 (citing Bankruptcy Code  ___ 524(e), 11 U.S.C. 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."); American ________ Hardwoods, Inc. v. Deutsche Credit Corp. (In re American ________________ ________________________ ________________ Hardwoods, Inc.), 885 F.2d 621, 626 (9th Cir. 1989)), or (2) ________________ debts of any nondebtor such as Ropes & Gray which concededly made no financial contribution to the Plan, see id. at 16-20 (citing _________ ___ ___ In re Heron, Burchett, Ruckert & Rothwell, 148 B.R. 665, 687 ____________________________________________  ____________________ 7The district court relied on slightly different grounds. First, it determined that it would be unfair to invoke res ___ judicata against Monarch Life, which honestly believed that the ________ injunctive provision was not broad enough to bar actions against parties like Ropes & Gray. Id. at 40-41. The court also ruled ___ that subparagraph (b) was inapposite because Ropes & Gray was no longer Monarch Life's "attorney" at the time of the confirmation hearing. Id. at 43-44. Nevertheless, it concluded that subpara- ___ graph (a) of the injunction was broad enough to bar Monarch Life's state court action against Ropes & Gray. Id. at 44-45. ___ The district court thereupon vacated the order of contempt, inasmuch as the lack of clarity in the injunctive provision not only made sanctions unwarranted but also undermined the bankruptcy court's threshold finding that Monarch Life was a contemnor. Id. at 46. ___ 9 (Bankr. D.D.C. 1992)).  Ropes & Gray counters that Monarch Life is barred, under the doctrines of res judicata and judicial estoppel, from ___ ________ litigating the scope of the bankruptcy court's power because it not only knowingly failed to appeal from the order confirming the chapter 11 Plan, but in its announced role as a Plan proponent it _________ acquiesced in its co-proponents' arguments that the bankruptcy __________ court possessed broad injunctive powers under Bankruptcy Code  105(a). See Stoll v. Gottlieb, 305 U.S. 165, 172 (1938) (unless ___ _____ ________ a party in interest objects, and appeals an erroneous ruling by the bankruptcy court that it had "jurisdiction" to confirm terms of plan, the ruling is conclusive in subsequent proceedings); Republic Supply Co. v. Shoaf, 815 F.2d 1046, 1052-53 (5th Cir. ____________________ _____ 1987) (same); cf. Celotex Corp. v. Edwards, 115 S. Ct. 1493, 1499 ___ _____________ _______ (1995) (if bankruptcy court determines that it possesses so- called "related to" jurisdiction to enjoin under Code 105(a), and the jurisdictional question remains open for determination, aggrieved litigant's recourse is by appeal from bankruptcy court decision, not by collateral attack on bankruptcy court order); cf. also Maggio v. Zeitz, 333 U.S. 56, 69 (1948) (contempt ___ ____ ______ _____ proceeding is not appropriate vehicle for attacking validity, or retrying the merits, of the order contravened by alleged contemnor). A. Standards of Review  A. Standards of Review ___________________ Although the conclusions of law reached by the bankruptcy court and the district court are subject to de novo __ ____ 10 review, the underlying findings of fact by the bankruptcy court are reviewed only for clear error. Western Auto Supply Co. v. ________________________ Savage Arms, Inc. (In re Savage Indus., Inc.), 43 F.3d 714, 719- _________________ _________________________ 20, n. 8 (1st Cir. 1994); In re G.S.F. Corp., 938 F.2d 1467, 1474 __________________ (1st Cir. 1991). The applicability vel non of preclusion ___ ___ principles is a question of law. See, e.g., Gonzalez v. Abreu, ___ ____ ________ _____ 27 F.3d 751, 755 (1st Cir. 1994). Since the judgment (viz., the order confirming the Plan) was rendered by a federal tribunal  the bankruptcy court see FDIC v. Shearson-American Express ___ ____ _________________________ Inc., 996 F.2d 493, 497 (1st Cir. 1993) (bankruptcy court ____ decisions trigger normal res judicata principles) (citing Katchen ___ ________ _______ v. Landy, 382 U.S. 323, 334 (1966)), cert. denied, 114 S. Ct. _____ _____ ______ 1054 (1994); see also, e.g., Stoll, 305 U.S. at 170 (finding ___ ____ ____ _____ bankruptcy court order confirming reorganization plan entitled to res judicata effect); Eubanks v. FDIC, 977 F.2d 166, 170 (5th ___ ________ _______ ____ Cir. 1992) (similar), federal preclusion principles apply. See ___ Blonder-Tongue Lab., Inc. v. University of Ill. Found., 402 U.S. __________________________ _________________________ 313, 324-25 (1971); Recoveredge L.P. v. Pentecost, 44 F.3d 1284, ________________ _________ 1290 (5th Cir. 1995); Orijas v. Louisiana-Pacific Corp., 31 F.3d ______ _______________________ 995, 1010 (10th Cir. 1993); Restatement (Second) of Judgments  __________________________________ 87. In order to invoke collateral estoppel (issue preclusion), Ropes & Gray must demonstrate that: (1) both the contempt proceedings and the confirmation proceedings involved the same ____ issue of law or fact; (2) the parties actually litigated the _____ ________ _________ issue in the confirmation proceedings; (3) the bankruptcy court actually resolved the issue in a final and binding judgment ________ ________ 11 (viz., its confirmation order); and (4) its resolution of that issue of law or fact was essential to its judgment (i.e., _________ necessary to its holding). See Grella v. Salem Five Cents Sav. ___ ______ ______________________ Bank, 42 F.3d 26, 30 (1st Cir. 1994); Piccicuto v. Dwyer, 39 F.3d ____ _________ _____ 37,40 (1stCir. 1994);Restatement (Second)of Judgments 27(1982).8 ________________________________ B. Merits of Issue Preclusion Claim B. Merits of Issue Preclusion Claim ________________________________  ____________________ 8Monarch Life argues that Ropes & Gray cannot rely on res ___ judicata principles because it filed no chapter 11 claim and, ________ therefore, was not a "party" to the chapter 11 confirmation proceedings. See, e.g., Apparel Art Int'l v. Amertex Enters. ___ ____ __________________ _______________ Ltd., 48 F.3d 576, 583 (1st Cir. 1995) (claim preclusion normally ____ requires "identicality of parties," or at least privity). Frequently, however, "res judicata" is used more inclusively, to ___ ________ refer either to claim preclusion or issue preclusion (i.e., ______ __ _____ __________ collateral estoppel). See Grella, 42 F.3d at 30-31 (noting that ___ ______ basis for bankruptcy court decision was unclear, and observing that labels "res judicata" and "collateral estoppel" are ___ ________ less important than substance of parties' argumentation in light of factual circumstances) (citing Dennis v. Rhode Island Hosp. ______ ___________________ Trust, 744 F.2d 893, 898 (1st Cir. 1984)); Railway Labor _____ ______________ Executives' Ass'n v. Guilford Transp. Indus., Inc., 989 F.2d 9, _________________ _____________________________ 11 n.3 (1st Cir. 1993) (noting confusion prevailing over same labels); see also Fiumara v. Fireman's Fund Ins. Cos., 746 F.2d ___ ____ _______ ________________________ 87, 90 n.1 (1st Cir. 1984) (noting "distinct family resemblance"  between two doctrines). Since Monarch Life seeks to relitigate only one component "issue" arising from the confirmation order (viz., the bankruptcy court's jurisdiction or power under  105(a)), the preclusion defense asserted by Ropes & Gray is more exactly characterized as collateral estoppel ("issue preclusion").  A party invoking issue preclusion need not show that it was privy to the first proceeding. See Parklane Hosiery Co. v. ___ _____________________ Shore, 439 U.S. 322, 326-28 (1979) (no "mutuality of parties" _____ rule); Blonder-Tongue Lab., 402 U.S. at 328 (same); Fiumara, 746 ___________________ _______ F.2d at 92; cf. DiPinto v. Sperling, 9 F.3d 2, 4 (1st Cir. 1993) ___ _______ ________ (Rhode Island law). It need only show that "the party against _____ _______ whom issue preclusion will be applied had a fair opportunity to ____ _____ __________ ____ __ _______ litigate the issue fully." Kyricopoulos v. Town of Orleans, 967 ____________ _______________ F.2d 14, 16 (1st Cir. 1992) (Massachusetts law dispenses with "mutuality" rule) (emphasis added). Of course, even if the bankruptcy court had based its contempt ruling on claim preclusion, we would have been free to affirm on any ground supported by the bankruptcy court record. See La Electronica, ___ _______________ Inc. v. Capo-Roman (In re Electronica, Inc.), 995 F.2d 320, 321 ____ __________ ________________________ n.1 (1st Cir. 1993). 12 1. "Same Issue"  1. "Same Issue"  __________ We must first identify the precise issue Monarch Life sought to "relitigate" in its defense against Ropes & Gray's motion for civil contempt. We have held that Bankruptcy Code  105(a) confers ample power upon the bankruptcy court to enjoin the initiation or continuation of judicial proceedings in a nonbankruptcy forum against nondebtors during the pendency of a chapter 11 case, where the court reasonably concludes that such actions would entail or threaten adverse "impact" on the administration of the chapter 11 estate. See In re G.S.F. Corp., ___ __________________ 938 F.2d at 1474. These injunctions serve simply as adjuncts to the automatic stay, see Bankruptcy Code 362(a), which ___ ostensibly protects only the debtor and its property from ____ creditor "grab-law" tactics after the "race to the courthouse." _____ See Austin v. Unarco Indus., Inc., 705 F.2d 1, 4-5 (1st Cir.), ___ ______ ____________________ cert. dismissed, 463 U.S. 1247 (1983). Since the automatic stay _____ _________ may induce creditors to refocus their recovery efforts upon the chapter 11 debtor's co-obligors, a temporary injunction is sometimes needed to protect nondebtors (e.g., a corporate debtor's principals and managing officers) whose time and energy should not be diverted to collateral lawsuits and away from the effort to reorganize the debtor. Like the automatic stay itself, see Bankruptcy Code 362(c), however, these accessorial ___ injunctions normally lapse at the latest following confirmation of the chapter 11 plan and the closing of the chapter 11 case, leaving the nondebtor co-obligor once again 13 exposed to pursuit by the discharged chapter 11 debtor's creditors.  The more intricate "jurisdictional" question raised by the confirmation order and contempt proceedings in this case is whether Congress intended an outer temporal boundary on the availability of injunctive relief under Bankruptcy Code 105(a). Since the chapter 11 debtor is the only entity permanently ___________ discharged upon confirmation of a chapter 11 plan, id. 1141(d), ___ its creditors usually are free to pursue all available remedies against those undischarged entities which were obligated, along with the chapter 11 debtor, on a prepetition debt. See id.  ___ ___ 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."). Whether the Code likewise empowers bankruptcy courts to enter permanent injunctions which _________ ___________ effectively confer de facto "discharge" relief upon the chapter __ _____ 11 debtor's co-obligors, and if so, under what conditions and limitations, are the topics of continuing debate and disagreement in both case law and commentary. See, e.g., Howard C. Buschmann ___ ____ III & Sean P. Madden, The Power and Propriety of Bankruptcy Court ___________________________________________ Intervention in Actions Between Nondebtors, 47 The Business _____________________________________________ Lawyer 913 (1992).  The case law splits along two principal lines. Some courts hold that section 105(a) does not permit a bankruptcy court permanently to enjoin post-confirmation lawsuits against nondebtors, since such an order would directly contravene the 14 "more specific" proscription in section 524(e). See, e.g., ___ ____ AmericanHardwoods, 885F.2d at626; LandsingDiversified Properties- _________________ _______________________________ II v. First Nat'l Bank & Trust Co. (In re Western Real Estate ___ _____________________________ __________________________ Fund, Inc.), 922 F.2d 592, 600-01 (10th Cir. 1990), modified on __________ ________ __ other grounds, 932 F.2d 898 (10th Cir. 1991). The factual cir- _____ _______ cumstances in these cases did not suggest, however, that the grant of injunctive relief was in any sense integral to the success of the chapter 11 reorganization. See American ___ ________ Hardwoods, 885 F.2d at 626 (noting no "unusual facts" warranting _________ permanent "discharge" of debtor's loan guarantor).  The second line of cases note that section 524(e) cannot be construed as an absolute or per se proscription against ________ ___ __ permanent injunctive relief for all nondebtors. See, e.g., In re ___ ____ _____ Heron, Burchette, 148 B.R. at 687 (noting that 524(e) "contains ________________ no language of prohibition and [thus] should not be interpreted __ ________ __ ___________ to limit court's power under 105(a)") (emphasis added). These courts have formulated various tests for determining when de __ facto "discharges" would not be ultra vires. See, e.g., Menard- _____ _____ _____ ___ ____ _______ Sanford v. Mabey (In re A.H. Robins Co.), 880 F.2d 694, 702 (4th _______ _____ _____________________ Cir.), cert. denied, 493 U.S. 959 (1989), cited with approval in _____ ______ _____ ____ ________ __ In re G.S.F. Corp., 938 F.2d at 1474-75; In re Master Mortgage ___________________ ______________________ Inv. Fund, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994) (collecting _________ cases). In extraordinary circumstances, it has been held that a bankruptcy court can grant permanent injunctive relief essential to enable the formulation and confirmation of a reorganization plan if, for example, nondebtors who would otherwise contribute 15 to funding the plan will not settle their mutual claims absent "protection" from potential post-confirmation lawsuits arising from their prepetition relationship with the chapter 11 debtor. See, e.g., In re A.H. Robins Co., 880 F.2d at 702. These courts ___ ____ _____________________ have taken into consideration whether (1) the creditors have overwhelmingly approved the plan, with the injunction; (2) the plan contemplates full payment of all creditor claims; and (3) the injunction would affect a relatively small class of claimants. Id. at 698, 700-702; In re Master Mortgage, 168 B.R. ___ _____________________ at 935. In this second line of cases, the courts have ascribed importance to the fact that the cooperation of essential "contributing" parties may not have been forthcoming, and no chapter 11 plan may have been practicable, absent an injunctive provision affording so-called incidental "protection" to __________ nondebtors who do not intend to contribute directly to the ___ chapter 11 plan. For example, if a non-"contributing" party holds an indirect claim against a would-be "contributing" party,9 such as a contingent claim for indemnification or contribution, the potential "contributing" party may decline to accept, or contribute to, the chapter 11 plan in circumstances  ____________________ 9Ropes & Gray argues that it "contributed" to Monarch Capital's chapter 11 plan to the extent it held contingent claims for indemnification or contribution against Monarch Capital, which it effectively "released" by refraining from filing a claim. See supra note 2. For present purposes, however, the ___ _____ term "contributing" parties is used to refer to those entities, such as the 235 Banks and Monarch Life, which proposed and signed onto the Plan. 16 where the non-"contributing" party remains free to implead him as a third-party defendant in a post-confirmation lawsuit. See In ___ __ re A.H. Robins, 880 F.2d at 702. In such circumstances, these _______________ courts have afforded the "incidental protection" of a permanent injunction by enjoining "direct" actions against the _______ ___ noncontributor in order to protect the contributor from exposure ______________ to indirect liability. 2. Actual Litigation 2. Actual Litigation _________________ Monarch Life represents that it had no inkling during the confirmation proceedings that any party was contending that section 105(a) enabled the bankruptcy court to grant the broad- based "incidental" injunctive relief required to protect a "noncontributing" party such as Ropes & Gray. In a memorandum submitted prior to confirmation by the 235 Banks, however, it was _____ __ ____________ plainly stated that  the Injunction must by necessity extend not only to parties like the 235 Banks or the [Monarch Life] Receiver who are signatories to, and gave actual consideration under, the Settlement Agreement, but also to those nonsignatory parties such as officers and directors of those parties . . . . That consideration will be seriously diminished and the releases granted the signatories worthless if the nonsignatories can continue to be sued, since certain signatory parties would be directly or indirectly liable to the ________ __ __________ ______ __ ___ parties being sued. Consequently, actions _______ _____ ____ against the nonsignatories will be as destructive to the settlement as actions against the signatories. (Emphasis added.) The 235 Banks memorandum repeatedly adverted to the problem posed for both "signatories" and "nonsignatories" unless the latter were insulated by injunctive relief from 17 post-confirmation lawsuits. Moreover, it prominently cited cases, such as A.H. Robins, supra, involving "incidental" injunc- ___________ _____ tive relief for noncontributing nondebtors holding contingent claims for indemnification or contribution. Monarch Life argues, nonetheless, that the 235 Banks memorandum does not establish that the section 105(a) issue was "actually litigated," within the meaning of the collateral estoppel doctrine, since the memorandum was not signed by Monarch Life and therefore merely represented the 235 Banks' view of the applicable law. We do not agree.  First, the 235 Banks and Monarch Life through its receiver held themselves forth in the confirmation proceedings as joint Plan proponents, frequently sharing responsibility for _____ presenting the merits of discrete portions of the Plan before the bankruptcy court. See also supra note 3. Monarch Life may ___ ____ _____ disagree with the litigation stance taken by its receiver prior to confirmation of the Plan, but it does not contend that the receiver could not bind it for issue preclusion purposes.  Second, there is no reason to suppose that Monarch Life itself did not expect to benefit nor indeed that it has not in fact benefited from the protection afforded in response to the 235 Banks' invitation to confer the broadest available "incide- ntal" protection, upon all noncontributing co-obligors, from future lawsuits "arising from or related to a claim against [Monarch Capital] or affecting or [sic] any property of [Monarch Capital]." Thus, we cannot simply assume that no protected 18 noncontributor held an indirect claim for indemnification or contribution against Monarch Life.  _______ _______ ____ Third, even if Monarch Life had not yet discovered specific grounds for its asserted cause of action against Ropes & Gray relating to Monarch Capital's abuse of the STIP, it cannot plausibly contend that Ropes & Gray's alleged involvement, as Monarch Capital's counsel during the relevant time period, was so far removed from Monarch Life's contemplation that it could not have weighed the strategic advantages and risks involved in advocating "incidental" injunctive relief prior to confirmation of the Plan. See, e.g., DeCosta v. Viacom Int'l Inc., 981 F.2d ___ ____ _______ _________________ 602, 605-06, 610 (1st Cir. 1992) (court may decide not to apply collateral estoppel where there has been a "significant" change in the law or factual circumstances since the first judgment was entered; and finding no such "significant change"), cert. denied, ____ ______ 113 S. Ct. 3039 (1993). Moreover, changed circumstances will preclude the application of collateral estoppel only if they might have altered the decision the court made in the first _______ proceeding. See Montana v. United States, 440 U.S. 147, 159 ___ _______ _____________ (1979); EEOC v. American Airlines, 48 F.3d 164, 167 (5th Cir. ____ _________________ 1995). And, Monarch Life cannot establish that it would not have proposed precisely the same injunction, whereby it agreed to release a number of viable causes of action against third parties "arising from" claims against Monarch Capital, even if it had known the particulars of its malpractice claim against Ropes & Gray in June 1992. Cf. Fiumara v. Fireman's Fund Ins. Cos., 746 ___ _______ ________________________ 19 F.2d 87, 91-92 (1st Cir. 1984) (noting that "all of the events which define the [subsequent] federal complaint occurred in the period before the [first proceeding] and were at least generally hinted at during that trial," and "[i]f they were not then litigated as hotly as plaintiff would now wish, they plainly could have been"). Finally, and most importantly, the "actual litigation" component in the collateral estoppel analysis does not require that Monarch Life be shown to have advocated the broad-based "incidental" injunction, but only that the "jurisdictional" issue was squarely raised by the 235 Banks, thus giving Monarch Life a full and fair opportunity to interpose objection if it disagreed with the 235 Banks' legal contentions. See Blonder-Tongue Lab., ___ __________________ 402 U.S. at 328 (in order to further the interests of finality and judicial economy, collateral estoppel doctrine requires that litigant be afforded "one full and fair opportunity for judicial resolution" of the issue). Therefore, since the section 105(a) "jurisdictional" issue was expressly broached in the 235 Banks' memorandum prior to confirmation of the Plan, and by prominent citation to decisions such as A.H. Robins, supra, Monarch Life's ___________ _____ silence alone satisfied the second criterion under the collateral estoppel analysis.10  ____________________ 10Monarch Life argues that the 105(a) order must be interpreted as enjoining only the noncontributors' cross-claims ____ impleading Plan contributors, not Monarch Life's initiation in Massachusetts Superior Court of its principal claim against the noncontributing Ropes & Gray. See Brief for Appellant at 21 ___ (citing Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984)). ___________ _______ Even if this "severability" contention had merit, the district 20 3. Actual Resolution 3. Actual Resolution _________________ Monarch Life argues that a genuine dispute remains as to whether the "ambiguous" order of confirmation actually resolved the section 105(a) "jurisdictional" issue "litigated" by ________ the parties prior to confirmation. See Reply Brief for Appellant ___ at 11 (citing Commonwealth of Mass. v. Departmental Grant Appeals _____________________ __________________________ Bd., 815 F.2d 778, 788 (1st Cir. 1987) (party may challenge ___ interpretation of ambiguous injunction not previously interpret- ed)); see also In re Monarch Capital Corp., 173 B.R. at 41 ___ ____ ______________________________ ("Appellants do not challenge the Bankruptcy Court's authority to enter the Injunction . . . ."). Consequently, it cannot be presumed that the same issue was before the bankruptcy court both in the confirmation proceedings and the contempt proceedings. Its argument begs the question.  Monarch Life asserts a two-pronged attack against the contempt order. Its first line of attack is that the injunctive provision in the confirmation order cannot be "expanded" to encompass Ropes & Gray's contingent obligations because bankruptcy courts have no power to enter such broad-based __ _____ injunctions under section 105(a). However, it cannot be considered a conclusive answer to Ropes & Gray's collateral estoppel defense for Monarch Life to say that it subjectively ____________  ____________________ court properly noted that it had been waived by Monarch Life's failure to raise it in the bankruptcy court contempt proceeding. See In re Monarch Capital Corp., 173 B.R. at 45 (issues not ___ _____________________________ raised before the bankruptcy court are deemed waived on appeal) (citing Juniper Dev. Group v. Kahn (In re Hemingway Transp., ___________________ ____ _________________________ Inc.), 993 F.2d 915, 935 (1st Cir.), cert. denied, 114 S. Ct. 303 ____ _____ ______ (1993)).  21 construed the confirmation order more narrowly than its language and context warranted. See Piccicuto, 39 F.3d at 41 (rejecting ___ _________ argument that prior judgment was ambiguous and used "regrettably loose language"). Rather, Monarch Life's construction must be evaluated against the objective import of the language in the confirmation order itself. As the confirmation order is dispositive, it is set out at length in the appendix. See infra ___ _____ Appendix pp. i-iii.  Monarch Life mischaracterizes the obvious breadth of _______ _______ the confirmation order as ambiguity. Even a cursory review of _________ the confirmation order demonstrates beyond doubt that the third criterion in the collateral estoppel analysis has been met. See ___ Grella, 42 F.3d at 30-31 (issue may be actually litigated and ______ resolved "even if it is not explicitly decided," as long as it is logically necessary to final decision).  Monarch Life emphasizes the fact that the bankruptcy court distinguished American Hardwoods11 a case in which the ___________________ enjoined action had been against a nondebtor who would not have _____ ___ ____ contributed to the chapter 11 plan and then stated that "the ___________ ___  ____________________ 11Monarch Life points also to a decision entered earlier in an unrelated adversary proceeding, wherein the bankruptcy court denied the chapter 11 trustee's motion to enjoin a suit by Monarch Capital shareholders against Monarch Life. It considers that decision probative because it noted the bankruptcy court's concern that such an injunction might exceed the limitations set forth in American Hardwoods. See In re Monarch Capital Corp., __________________ ___ ____________________________ No. 91-41379-JFQ (Bankr. D. Mass. Apr. 8, 1992). We do not agree. First, the proposed injunction involved there was not part of thus could not be "essential" to the reorganization plan. Further, the bankruptcy court expressly distinguished American Hardwoods in its final order of confirmation.  __________________ 22 persons protected by the [Monarch Capital] Injunction have con- _______ _________ tributed substantial amounts to the Plan . . . ." (Emphasis added.) But the bankruptcy court did not say that Plan contribu- tors, such as the 235 Banks and Monarch Life, were the only ____ entities "protected" by the injunction. Rather, it said that this injunctive protection was the reason for entering a perma- ______ nent injunction. Moreover, in distinguishing American Hardwoods, __________________ where protection for contributors was not at issue, the bankrupt- ___ cy court cited with approval several decisions like A.H. ____ Robins, supra (and provided plain parenthetical descriptions) ______ _____ holding that section 105(a) empowers bankruptcy courts to grant permanent injunctions not only against actions asserting claims directly against plan contributors, but "incidental" injunctions ________ protecting plan contributors from indirect claims for indemnifi- ________ ______ cation and contribution, at least where such protection is deemed "essential" to the success of a reorganization plan. See infra ___ _____ Appendix at p. i.  By citing A.H. Robins, supra, and cases of its kind, ___________ _____ the bankruptcy court plainly signaled its endorsement of the Plan proponents' request for a broad injunction extending "incidental" protection to all noncontributors who might otherwise implead Plan contributors as third-party defendants in subsequent state court actions. The bankruptcy court then made the required predicate findings for a broad "incidental" injunction as enumer- ated in A.H. Robins. It found that (1) the injunction was ____________ "essential" to garner the Plan contributors' cooperation in 23 Monarch Capital's reorganization, and (2) Monarch Capital's creditors overwhelmingly had approved the injunctive provision. See infra Appendix at p. ii. Monarch Life cannot turn a blind ___ _____ eye to the plain import of the injunctive provision in the confirmation order, then under the guise of an alleged "ambigu- ity" attempt to relitigate the "jurisdiction" of the court to enter the injunction.  Finally, this is not a conventional "preclusion" case, wherein the court is required to interpret a first judgment which was entered by a different tribunal. Even though our interpreta- _________ tion of the confirmation order essentially presents a question of law, see United States v. O'Rourke, 943 F.2d 180, 186 (2d Cir. ___ _____________ ________ 1991), the bankruptcy court in this case was interpreting its own order of confirmation. We think customary appellate deference is appropriate in these circumstances with respect to the bankruptcy court's determination that the confirmation order was suffi- ciently broad to confer "incidental" protection to noncontribut- ing parties like Ropes & Gray.12 Similarly, because the bank-  ____________________ 12See, e.g., In re Weber, 25 F.3d 413, 416 (7th Cir. 1994) ___ ____ ___________ (noting that bankruptcy court's interpretation of its own confir- mation order is entitled to same deference as generally accorded courts construing their own judgments); William B. Schnach ____________________ Retirement Trust v. Unified Capital Corp. (In re Bono Dev., ________________ ______________________ __________________ Inc.), 8 F.3d 720, 721-22 (10th Cir. 1993) (same; interpreting ____ bankruptcy court's "superpriority" order); Texas N.W. Ry. Co. v. __________________ Diamond Shamrock Ref. & Mktg. Co. (In re Chicago, Rock Island & __________________________________ _____________________________ Pac. R.R. Co.), 865 F.2d 807, 810-11 (7th Cir. 1988) (same; _______________ construing bankruptcy court's order approving sale); Ranch House ___________ of Orange-Brevard, Inc. v. Gluckstern (In re Ranch House of ________________________ __________ _______________________ Orange-Brevard, Inc.), 773 F.2d 1166, 1168 (11th Cir. 1985) _____________________ (same; confirmation order); see also generally Farmhand, Inc. v. ___ ____ _________ ______________ Anel Eng'g Indus., Inc., 693 F.2d 1140, 1146 (5th Cir. 1982) _________________________ (noting that district courts are entitled to deference in inter- 24 ruptcy court was directly engaged in the give-and-take of the confirmation proceedings and had the better vantage point for determining whether the parties had been fairly apprised of the "jurisdictional" issue, we likewise think it prudent to accord some deference to its determination that the section 105(a) issue was "actually litigated." See Ranch House of Orange-Brevard, ___ _______________________________ Inc. v. Gluckstern (In re Ranch House of Orange-Brevard, Inc.), ____ __________ ___________________________________________ 773 F.2d 1166, 1168 (11th Cir. 1985) ("The bankruptcy judge who has presided over the case from its inception is in the best position to clarify any apparent inconsistencies in the court's rulings."); supra Section II.B.2. _____ Notwithstanding the numerous warning signals, Monarch Life elected to treat the obvious breadth of the injunctive provision as ambiguity. The record remains clear, nonetheless, that the bankruptcy court's "jurisdiction" to enjoin enforcement of Monarch Life's claims against the noncontributing Ropes & Gray was actually litigated and that Monarch Life therefore was re- quired, but failed, to object to the confirmation order and/or appeal from the section 105(a) injunctive provision included in it.  4. Essentiality 4. Essentiality ____________ It follows, a fortiori, from our determination that the _ ________ confirmation order included an "incidental" injunction, that the bankruptcy court's ruling on its section 105(a) "jurisdiction"  ____________________ preting own orders); Securities and Exch. Comm'n v. Sloan, 535 ____________________________ _____ F.2d 679, 681 (2d Cir. 1976) (same), cert. denied, 430 U.S. 966 _____ ______ (1977).  25 was essential to the effectiveness and validity of the injunctive provision. See Stoll, 305 U.S. at 171-72 ("Every court in ___ _____ rendering a judgment tacitly, if not expressly, determines its jurisdiction over . . . the subject matter."). III III CONCLUSION CONCLUSION __________ We therefore hold that the issue of the bankruptcy court's power to enter its so-called "incidental" injunction was precluded, having been conclusively resolved in the confirmation order which Monarch Life neither opposed nor appealed. Though there is conflicting authority on the "jurisdictional" reach of section 105(a), the confirmation order cited precedent for a broad-based "incidental" injunctive provision. Cf. Restatement ___ ___________ (Second) of Judgments 29 cmt. j (1980) (court may refuse to _____________________ invoke collateral estoppel if first judgment was "patently incorrect"). Accordingly, Monarch Life cannot now argue that the confirmation order is not subject to this broad construction. We express no view on the soundness of the precedents cited in the confirmation order, nor on their applicability to the particular Plan proposed by Monarch Life.13 The proper recourse for ad-  ____________________ 13Ropes & Gray cross-appeals from the bankruptcy court's refusal to award it compensatory damages for Monarch Life's contempt. See Brief for Appellee at 48 (citing Perker v. United ___ ______ ______ States, 153 F.2d 66, 70 (1st Cir. 1946) (noting that "complainant ______ is entitled as a matter of right to an order in civil contempt imposing a compensatory fine")). As the district court noted, however, the level of specificity needed to ground a finding of contempt is not susceptible to precise quantification. We find no abuse of discretion in the bankruptcy court's implicit deter- mination that Monarch Life did not commit such an egregious 26 dressing those questions was by direct appeal from the order of confirmation.  Finally, the confirmation order enjoined all post- confirmation lawsuits "arising from" or "related to" claims against Monarch Capital. See supra p. 6. The complaint filed ___ _____ against Ropes & Gray in Massachusetts Superior Court by Monarch Life alleges a joint scheme by Monarch Capital and Ropes & Gray to abuse the STIP account at Monarch Life's expense plainly a claim "arising from" Monarch Life's STIP claim against Monarch Capital. We agree with the district court that it was not unreasonable to expect that Ropes & Gray might attempt to assert cross-claims against parties who "contributed" to the Monarch Capital Plan, or cross-claims which ultimately would "affect" Monarch Capital's property in the hands of its "direct or indi- rect transferee[s]" or "successor[s] in interest." See supra p. ___ _____ 6; see also In re Monarch Capital Corp., 173 B.R. at 45 (reject- ___ ____ ___________________________ ing Monarch Life's argument that there is absolutely no conceiv- able ground upon which Ropes & Gray might assert a cross-claim in the superior court action). Thus, it is academic whether the injunction also "protects" Ropes & Gray as Monarch Life's former ______ "counsel."  The judgment of the district court is affirmed. The The judgment of the district court is affirmed. The _______________________________________________________ parties shall bear their own costs. parties shall bear their own costs. __________________________________  ____________________ contempt as would compel the imposition of sanctions. See, e.g., ___ ____ Johnston Envtl. Corp. v. Knight (In re Goodman), 991 F.2d 613, ______________________ ______ _____________ 620 (9th Cir. 1993) (noting that bankruptcy court has discretion to award no damages if it finds contempt insufficiently "egre- gious"). 27 APPENDIX APPENDIX ________ Section 105 of the Bankruptcy Code grants the Court broad equitable power to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of Title 11. In re Old Orchard __________________ Investment Co., 31 Bankr. 599, 601 (W.D. Mich. 1983); ______________ Menard-Sanford v. Mabey (In re A.H. Robins Co.), 880 ______________ _____ _______________________ F.2d 694, 702 (4th Cir. 1989), cert. denied, 110 S. Ct. _____ ______ 376 (1989) (affirming power of bankruptcy court to enjoin suits permanently against nondebtors in a plan, where there existed certain indemnification rights against the debtor); In re Energy Co-op, Inc., 886 F.2d ________________________ 921 (7th Cir. 1989) (permanent injunction issued pursu- ant to settlement agreement); MacArthur Co. v. Johns- _____________ ______ Manville Corp. (In re Johns-Manville Corp.) 837 F.2d 89 ______________ __________________________ (2d Cir. 1988), cert. denied, 488 U.S. 868 (1988) _____ ______ (permanent injunction may be issued against actions against an insurer as part of settlement incorporated in a chapter 11 plan notwithstanding claims that this impermissibly discharged a nondebtor); see In re CCA ___ __________ Partnership, 70 Bankr. 696 (Bankr. C.D. Cal. 1985) ___________ (judgment creditor enjoined from enforcing claims against debtor's individual partners). Section 105 grants bankruptcy courts "ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process, whether in a liquidation or in a reorganization case." In re Johns Manville Corp., 26 Bankr. 420, 425 (Bankr. __________________________ S.D.N.Y. 1983), quoting Collier on Bankruptcy 362.05 _______ _____________________ (15th ed. 1982). Further, bankruptcy courts "may issue or extend stays to enjoin a variety of proceedings which will have an adverse impact on the debtor's ability to formulate a Chapter 11 plan." In re Johns ____________ Manville Corp., 40 Bankr. 219, 226 (S.D.N.Y. 1984). ______________ Under section 105, this Court has the power to issue injunctions which prevent proceedings against nondebtor third parties where pursuit of such actions would materially and adversely affect the estate or creditor recoveries under a plan of reorganization. See Codfish Corp. v. FDIC (In re Codfish Corp.), 97 ___ ______________ ____ ____________________ B.R. 132, 135 (Bankr. D.P.R. 1988) (injunctions appro- priate where there is clear and convincing evidence "that the estate would be substantially and adversely affected by the continuance of such an action"); In re _____ Monroe Well Serv., Inc., 67 B.R. 746, 751 (Bankr. E.D. _______________________ Pa. 1986) (injunctions appropriate to avoid anticipated adverse impact on bankruptcy estate); G.S.F. Corp., 938 ____________ F.2d [1464,] 1474 [(1st Cir. 1991) (adverse impact on debtor's estate required for injunction against third i party actions). This Court has the power to approve the releases and issue the Injunction with respect to the Trustee, Temporary Receiver and creditors' Committee for matters in connection with the chapter 11 case. In re Drexel _____________ Burnham Lambert Group, Inc., 138 B.R. [723, 753 (Bankr. ___________________________ S.D.N.Y. 1992)].  Where an injunction allows a settlement that forms the basis of a chapter 11 plan to take effect, where the entire settlement and hence the plan hinges on the parties being free from the very claims that the in- junction would prohibit, courts will order the injunc- tive relief. See, e.g., In re A.H. Robins Co., Inc., ___ ____ ____________________________ 880 F.2d 694 (4th Cir.), cert. denied, 493 U.S. 959 _____ ______ (1989); MacArthur Co., 837 F.2d [at 89]; SEC v. Drexel _____________ ___ ______ Burnham Lambert, Inc. (In re Drexel Burnham Lambert ______________________ _______________________________ Group, Inc.), 130 B.R. 910, 928 (S.D.N.Y. 1991), aff'd, ___________ _____ 960 F.2d 285 (2d Cir. 1992); UNARCO Bloomington Factory __________________________ Workers v. UNR Indus., Inc., 124 B.R. 268 (N.D. Ill. _______ ________________ 1990); Republic Supply Co. v. Shoaf, 815 F.2d 1046, ____________________ _____ 1050 (5th Cir. 1987). The opinion of the Court of Appeals in the Ninth Circuit in In re American Hardwoods, 885 F.2d 621 (9th _________________________ Cir. 1989) is inapposite. In that case, guarantors were protected by the provisions of a plan, although they apparently provided no contribution to that plan. The injunction was not shown to be essential to the plan. The court also notes that section 524(e), on which the Ninth Circuit relies, does not by its terms preclude the entry of injunctive relief in favor of nondebtors making plan contributions, particularly where as here, creditors have overwhelmingly consented to it. ... In this case, the persons protected by the Injunction have contributed substantial amounts to the Plan, creditors have agreed to the Injunction in order to get these payments, and the Injunction is the only basis on which to build, confirm and effectuate the Plan. Recent cases following American Hardwoods are ___________________ distinguishable from the facts of this case on similar grounds. See, e.g., In re Western Real Estate Fund, ___ ____ _______________________________ 922 F.2d 592 (10th Cir. 1990). In Western, an attorney _______ was not enjoined from collecting all fees for work done on behalf of the debtor. In that case, the fees at issue were owed by a nondebtor third party who did not contribute to the debtor's plan. The attorney was allowed to collect against that third party. In In re _____ Rohnert Park Auto Parts, Inc., 113 B.R. 610 (9th Cir. ______________________________ ii BAP 1990), a creditor was time barred from asserting a claim in the debtor's bankruptcy. The creditor was enjoined by the bankruptcy court from collecting against a nondebtor third party who was liable for the debt. The [court] did not uphold that plan provision. However, the nondebtor third party had not contributed to the funding of the plan, nor was the injunction shown essential to that plan. In this case, however, the persons protected by the Injunction are the princi- pal contributors of consideration to the Plan. Those persons would not contribute without the Injunction. Therefore, Western Real Estate and Rohnert Park Auto, ____________________ __________________ like American Hardwoods, are inapposite. __________________ In re Monarch Capital Corp., No. 91-41379-JFQ, slip op. at 23-27 ____________________________ (Bankr. D. Mass. June 25, 1992). iii